IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| GREG HERRON, | CV 22-189-M-DLC |
| Plaintiff, | |
| vs. | ORDER |
| MINERAL COUNTY ET AL., | |
| Defendants. | |

Plaintiff Greg Herron has filed a 42 U.S.C. § 1983 complaint alleging violations of his constitutional rights at Mineral County Jail. (Doc. 2.) He has also moved to proceed in forma pauperis and to appoint counsel. (Docs. 1 and 3.) The motion to proceed in forma pauperis will be granted. The motion for counsel will be denied. The Complaint as drafted fails to state a claim for relief and should be dismissed. Herron will be given the opportunity to amend, if he is able.

**I. STATEMENT OF THE CASE**

    **A.    Parties**

Herron is currently incarcerated at Montana State Prison, but the events at issue occurred at Mineral County Jail during a seven-month period in 2022. His Complaint does not specify whether he was a pretrial detainee at Mineral County or a convicted prisoner. He names as defendants Mineral County, Mineral County Administrators, Sheriff Mike Toth, Undersheriff Wayne Cashman, Commissioners Duan Simons and

1

Dawn Terril, and Mineral County Attorney Debra Jackson. (Doc. 2 at 1.)

### B. Allegations

Herron was incarcerated at Mineral County Jail from March 13 to October 27, 2022. He alleges his Eighth and Fourteenth Amendment rights were violated while he was there. These alleged violations include: no heat or air conditioning; lack of privacy when using "dry off area and dressing and undressing area" and the toilets; inaccurate phone number for the PREA hotline[1]; the unjustified use of a 24-hour camera in one cell; an outdated policy handbook; no religious services; poor kosher diet; no mental health services; no qualified medical staff; denial of medical care; poor cell cleanliness; inadequate grievance process; improper money order procedure; difficulty meeting with public defenders; lewd commentary by a 911 dispatcher; the presence of correctional staff during medical visits; and incorrect medicine distributions.

## II. MOTION TO PROCEED IN FORMA PAUPERIS

Herron has filed a Motion to Proceed in Forma Pauperis and submitted an account statement sufficient to make the showing required by 28 U.S.C. §1915(a). (Doc. 1.) The request to proceed in forma pauperis will be granted. Pursuant to 28 U.S.C. § 1915(b)(1), Herron must pay the statutory $350.00 filing fee. Herron

---

[1] One aspect of jails' compliance with the Prison Rape Elimination Act of 2003 is to provide a method for private reporting of claims of sexual abuse. *See* Montana Department of Corrections Policy 1.1.17(F).

submitted an account statement showing an inability to pay that fee; therefore, the initial partial filing fee is waived, and he may proceed with the case. *See Bruce v. Samuels*, 577 U.S. 82, 84 (2016)("the initial partial filing fee may not be exacted if the prisoner has no means to pay it, § 1915(b)(4)").

Herron will be required to pay the filing fee in installments and make monthly payments of 20% of the preceding month's income credited to his prison trust account. The percentage is set by statute and cannot be altered. 28 U.S.C. § 1915(b)(2). Plaintiff must make these monthly filing-fee payments simultaneously with the payments required in any other cases he has filed. *Bruce*, 577 U.S. at 87. By separate order, the Court will direct the facility where Herron is held to forward payments from his account to the Clerk of Court each time the account balance exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

### III. MOTION TO APPOINT COUNSEL

Herron has also moved for the appointment of counsel. (Doc. 3.) No litigant, including incarcerated prisoners proceeding in forma pauperis, has a constitutional right to be represented by appointed counsel when they choose to bring a civil lawsuit under 42 U.S.C. § 1983. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn on other grounds*, 154 F.3d 952, 962 (9th Cir. 1998). The Court may appoint counsel for an indigent plaintiff only under "exceptional circumstances." 28 U.S.C. § 1915(e)(1); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). This is

not such an extraordinary case. The motion will be denied.

### IV.  SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

Herron is a prisoner proceeding in forma pauperis so the Court must review his Complaint under 28 U.S.C. §§ 1915, 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

For the reasons explained in this opinion, Herron's Complaint fails to state a claim for relief and must be dismissed. First, undergirding the inadequacy of many of Herron's claims is his failure to identify the role any particular individual had in the alleged violations. A plaintiff must present factual allegations against each individual defendant sufficient to state a plausible claim for relief and place each individual defendant on notice of the claim against them. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The allegations must link the actions or omissions of each named defendant to a violation of his rights. *Iqbal*, 556 U.S. at 676-77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009). Herron has not alleged any specific facts regarding Defendants Mineral County, Mineral County Administrators, Sheriff Mike Toth, Commissioners Duan Simons and Dawn Terril, and Mineral County Attorney Debra Jackson, all of

whom he has identified as defendants. (Doc. 2 at 2 - 3.) While he has appended 126 pages of grievances and other documents to his Complaint, it is not the Court's duty to comb through those pages to determine if they contain sufficient information to support an allegation. Herron must include any pertinent facts from the information he has in the allegations of his Complaint. He fails to state claims against these defendants.

If Herron intends to state claims against any of these individual defendants in their supervisory capacity under § 1983, he must establish that the supervisor's prior knowledge of unconstitutional conduct committed by subordinates would give the supervisor notice of the need for changes. *Howell v. Earl*, 2014 WL 2594235 (D. Mont. 2014) (citing *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 201)); *see also Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007). Allegations against supervisors that resemble "bald" and "conclusory" allegations will be dismissed. *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012). Herron must allege "sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Id*. at 942 (citing *Starr*, 652 F.3d at 1206-07). Herron fails to state supervisory liability claims against these defendants.

Herron also fails to state a claim against Mineral County itself. 42 U.S.C. § 1983 allows municipal liability in limited circumstances. In *Monell v. Dept. of Social Services of City of New York*, the United States Supreme Court, announced the

following standard governing the liability of a municipality under 42 U.S.C. § 1983:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. 658, 694.

To sufficiently allege a *Monell* claim against Mineral County, Herron must demonstrate that (1) he was deprived of a constitutional right; (2) Mineral County had a policy or custom; (3) the policy or custom amounted to deliberate indifference to his constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, if the policy or custom in question is an unwritten one, Herron must show that it is so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). Herron has failed to allege facts regarding any such policy of Mineral County.

Finally, Herron also fails to allege any personal damage caused by some of the asserted violations. He dislikes the money order procedure yet does not claim that he lost any money. (Doc. 2 at 12 – 13.) Likewise, he asserts that there is a delay before "people" get their public defenders, but he makes no allegation that he himself had this problem. (Doc. 2 at 13.) Those allegations fail to state a claim and will be

6

disregarded.

### A. Conditions of Confinement

A pervasive flaw in Herron's claims is that many of his grievances were heard and responded to by the jail, if not always accommodated exactly as he would like. The Eighth Amendment's prohibition of "cruel and unusual punishment" applies only after conviction and sentence. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Pre-trial detention, on the other hand, is governed by the Due Process Clause of the Fourteenth Amendment. *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 531 (1979)). While the protections under the two are largely concomitant, *see City of Revere*, 463 U.S. at 244 ("[T]he due process rights of a person in [a pretrial detainment] situation are at least as great as the Eighth Amendment protections available to a convicted prisoner."), and "[u]nder both clauses[] the plaintiff must show that the prison officials acted with 'deliberate indifference,'" *Castro*, 833 F.3d at 1068, the elements a plaintiff must show to prove such indifference are different, *id.* at 1070–71. To prove an Eighth Amendment violation, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1068 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A Fourteenth Amendment violation, on the other hand, does not require

proof of subjective awareness. *Id.* at 1071. Herron's status is unclear; however, under either standard, several of his allegations his fail to state a claim.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Farmer*, 511 U.S. at 832. An Eighth Amendment violation in this context has two elements: first, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm, *id.* at 834, and second, the prison official acted with "deliberate indifference" to harm, i.e., the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," *id.* at 837.

Under this legal framework, it is clear that many of Herron's allegations fail to state a claim upon which relief can be granted. He complained about the heat in the jail over the summer, but he also states that the jail allowed inmates to sleep outside, and that the jail provided fans for inside. (Doc. 2 at 5.) He complained about the use of a camera in one cell, but then states that it was removed. (Docs. 2 at 7; 2-1 at 119.) He asserts that the cells were not clean enough, but then explains that they were deep cleaned. (Doc. 2 at 10 – 11.) He complains about the grievance procedure not having carbon copies for the inmates to retain, but then attaches dozens of pages of his grievances and the responses thereto. (Doc. 2 at 12; Doc. 2-1.) He complains that the inmate handbook was out of date, but then it was updated. (Doc. 2 at 8.) All of these concerns were responded to with jail action following his grievances. None evinces

deliberate indifference on the part of the jail, and all will be dismissed.

## B. Religious Claims

Herron makes two religious claims: there were no religious services, and the kosher diet he requested was inadequate. (Doc. 2 at 8 – 9.) Herron relies on the Eighth and Fourteenth Amendments, generally, for his claims, but a religious claim would arise under the First Amendment's Free Exercise Clause or under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). 42 U.S.C. § 2000cc–1(a). RLUIPA poses a lower bar to a plaintiff, so the Court will consider Herron's claims in light of RLUIPA's requirements.

To state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a "religious exercise," and (2) the State's actions have substantially burdened that exercise. *Shakur v. Schriro,* 514 F.3d 878, 888-89 (9th Cir.2008). If the prisoner satisfies those elements, then the State must prove its actions were the least restrictive means of furthering a compelling governmental interest. *Warsoldier v. Woodford,* 418 F.3d 989, 995 (9th Cir.2005). To constitute a substantial burden, a limitation of religious practice "must impose a significantly great restriction or onus upon such exercise." *San Jose Christian Coll. v. City of Morgan Hill,* 360 F.3d 1024, 1034 (9th Cir.2004).

Herron fails to allege such a claim. His religious allegations relate to being unable to see a pastor, a request have a Torah, and the adequacy of his kosher diet.

9

(Doc. 2 at 8 – 9.) He fails to identify the specific religious exercise he practices, other than asking for pastors and then changing his mind and asking for Jewish accommodations. Herron's Complaint fails to identify any individual who prevented him from practicing his religion or burdened any specific practice. He states generalized facts about the availability of a pastor but he does not allege a personal religious practice that might state a federal claim for relief. In fact, the documents attached to his Complaint show that he requested a kosher diet on October 11, 2022, and then asked to go off of it on October 24th, undermining any credible inference that the jail was burdening a sincerely held religious exercise. (Doc. 2-1 98 – 102.) Herron has not stated a claim for deprivation of his religious rights.

### C. Privacy Claims

Herron alleges various violations of his right to privacy. He asserts that there is "no place to get dressed, undressed, dried off without being viewed…", claiming that detention officers, people walking outside the detention area, and people in the dispatch center can see the inmates changing. (Doc. 2 at 5.) The details provided, however, do not plausibly allege such a dire scenario. The screen for the shower has holes in, but he claims to have plugged the holes with paper. The other examples of being viewed include things such as a reflection in a window, or through an opened door.

Incarcerated prisoners retain a limited right to bodily privacy, particularly in front of strangers of the opposite sex. *Grummett v. Rushen,* 779 F.2d 491, 494 (9th Cir.1985); *see also Cumbey v. Meachum,* 684 F.2d 712, 714 (10th Cir.1982) ("Although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether.") Pretrial detainees have at least the same due process right to bodily privacy as a prisoner. *See Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017). An impingement on an inmate's privacy is analyzed using *Turner v. Safley's* rational relationship test to determine whether the situation at Mineral County Jail is "reasonably related to legitimate penological interests." *Michenfelder v. Sumner*, 860 F.2d 328, 333–34 (9th Cir. 1988) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987).)

To determine if a prison regulation (or, in this case, a physical set up) can survive a constitutional challenge, we consider whether (1) there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "there are alternative means of exercising the right"[1]; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources"; and (4) there is an "absence of ready alternatives[.]" *Id.* at 89–90 (internal quotations and citations omitted).

The Ninth Circuit has concluded that inmates had not demonstrated that "restricted observations by members of the opposite sex [were] so degrading as to require intervention by this court." where "the positions to which they are assigned require infrequent and casual observation, or observation at a distance," *Grummett v. Rushen,* 779 F.2d 491, 494 (9th Cir.1985). The Constitution does not bar female guards from occasionally being present at strip searches of men or from routinely serving on shower duty in a men's prison. *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992). Herron has failed to allege facts that suggest any viewing of inmates occurs more than in passing and at a distance. If he intends to amend and state a claim, he must provide greater detail about how exactly individuals can be viewed and why they are not able to shield themselves from being viewed.

Herron also alleges that CO Ratliff sat in his medical appointment and would not leave when asked, which was a violation of his privacy. (Doc. 2 at 14.) The Ninth Circuit has held that, generally, a person has a constitutionally protected privacy interest in avoiding disclosure of medical information. *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998). However,

> "[I]mprisonment carries with it the circumscription or loss of many significant rights. Loss of privacy is an "inherent incident[ ] of confinement. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.

*Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010) (internal citations and quotations omitted.) Escorting an inmate outside of the jail to attend a medical appointment is a scenario fraught with complications. Herron does not allege anything about the facts of the presence of the guard at his appointment that would suggest a violation of his privacy beyond what was required to maintain security in a situation with an inmate and a private third party. If Herron intends to amend, he must state claims that plausible allege such a violation.

### D. PREA VIOLATION/VERBAL ABUSE

Congress enacted PREA to address the problem of rape in prison by (1) creating a commission to study the issue and recommend national standards to prevent, detect, and respond to prison rape; (2) applying national standards to state and federal agencies and departments that maintain prisons or detention facilities; and (3) conditioning eligibility for federal grant money on compliance with these standards. 42 U.S.C. §§ 15602, 15605. PREA did not create a private right of action for its enforcement. Nothing in PREA's language, structure, or legislative history suggest that Congress intended to create a private remedy for noncompliance with the PREA. *See* 42 U.S.C. § 15607(e) (explicitly directing the Attorney General to enforce compliance with the PREA); *see also Sandoval,* 532 U.S. at 286 (explaining that absent Congressional intent "to create not just a private right but also a private remedy ... no private right of action exists."). PREA does not provide Herron a private right of

13

action.

However, Herron may intend to state a claim of sexual abuse, which can be a constitutional violation. Herron alleges that a 911 dispatcher who works in the jail made several lewd and abusive comments to Herron and other inmates. (Doc. 12 at 13 - 14.) Herron has not listed this person as a defendant in the section of his Complaint that identifies defendants. (Doc. 2 at 2 - 3.) Regarding the lewd comments alleged in the Complaint, Herron has not alleged a viable § 1983 Eighth Amendment sexual harassment or abuse claim. The Ninth Circuit has held that:

> a prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner.

*Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020). Herron does not state facts sufficient to allege an Eighth Amendment sexual abuse claim.

### D. Mental Health Treatment/Personnel/Medicine Administration

Herron has a number of claims related to his mental and physical health. Herron states that he had a mental breakdown and "my actions were only going to be used for training per CO Rizzy." (Doc. 2 at 8.) Twice he was put on a new medications, and his return visit to his doctor for assessment was delayed by several weeks. (Doc. 2 at 9 - 10.)

As mentioned, Herron's status at Mineral County Jail is not clear. Lack of medical care in a prison context may give rise to an Eighth Amendment or Fourteenth Amendment claim. A prisoner must allege that a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs," to sufficiently state a §1983 claim for failure to provide medical care. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986). "[C]laims for violations of the right to adequate medical care brought by *pretrial detainees* against individual defendants under the *Fourteenth Amendment* must be evaluated under an objective deliberate indifference standard." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1122–25 (9th Cir. 2018) (emphasis added) (relying on *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc), and concluding that the subjective deliberate indifference standard under the Eighth Amendment did not apply to pretrial detainee's inadequate medical care claim under the Fourteenth Amendment).

The Ninth Circuit employs a two-prong test for deliberate indifference to medical needs. A plaintiff first must show "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). A

plaintiff then must show "the defendant's response to the need was deliberately indifferent." *Id.*

The second prong requires showing "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Id.* Such indifference may manifest in two ways. "It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05).

Herron may be able state a claim for denial of medical care, but he must provide more facts for the court, some of which may be included in his 126 pages of exhibits. He states that his visits to the doctor were delayed, yet he does not provide any information about who was involved with scheduling the visits, whether anyone was aware of his problems, whether anyone attempted to schedule his visits, etc. He provides no dates to provide notice to any defendant of which particular actions were deliberately indifferent. He does mention Undersherriff Cashaman and CO Rizzy in his allegations, but it is not clear what these two people did or did not do. (Doc. 2 at 10.) As it stands, he has failed to identify any specific action by a specific defendant that reflected deliberate indifference to his serious medical need. Any amended complaint must succinctly and clearly identify whose actions, on what date, interfered with Herron's medical care.

## III. CONCLUSION

The Court has screened Herron's Complaint and determined that it fails to state a claim upon which relief may be granted. The Complaint will be dismissed, if Herron cannot file an amended complaint that complies with this order. Any amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint by reference. Any amended complaint must consist of **short, plain statements** telling the Court: (1) the rights Herron believes were violated; (2) the name of the defendant(s) who violated the rights; (3) exactly what **each** defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of Herron's rights; (5) when the alleged actions took place; and (6) what injury Herron suffered because of that defendant's conduct. Fed. R. Civ. P. 8; *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Based upon the foregoing, the Court issues the following:

### ORDER

1. Plaintiff's motion to proceed in forma pauperis is GRANTED. (Doc. 1.)

2. Plaintiff's motion for the appointment of counsel is DENIED. (Doc. 3.)

3. Within twenty-one days of the making of this Order, Herron shall file an amended complaint, if he is able to do so.

4. The Clerk of Court is directed to provide Herron with an Amended

Complaint form. The Amended Complaint must contain all of Herron's claims in one document and not refer to or incorporate other documents.

3. If Herron fails to file a timely Amended Complaint, the Clerk of Court is directed to enter judgment in this matter according to Fed. R. Civ. P. 58. The dismissal will count as a strike within the meaning of 28 U.S.C. § 1915(g).

4. At all times during the pendency of this action, Herron must immediately advise the Court and opposing counsel of any change of address and its effective date. Failure to file a Notice of Change of Address may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

DATED this 6th day of January, 2023.

_____
Dana L. Christensen, District Judge
United States District Court